UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH MCNORIELL,

          Petitioner,

                           CASE NO. 06-CV-11832
v.                             HONORABLE JOHN CORBETT O'MEARA

MILLICENT WARREN,

          Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I.     Introduction

Joseph McNoriell ("Petitioner"), a Michigan prisoner has filed a petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his

constitutional rights. Petitioner was convicted of five counts of assault with intent to commit

murder, Mich. Comp. L. § 750.83, discharge of a firearm at an occupied structure, Mich. Comp.

L. § 750.234b, and possession of a firearm during the commission of a felony, Mich. Comp. L. §

750.227b, following a jury trial in the Wayne County Circuit Court. He was sentenced to

concurrent terms of 15-25 years imprisonment on the assault convictions, a concurrent term of

two years six months to four years imprisonment on the firearm discharge conviction, and a

consecutive term of two years imprisonment on the felony firearm conviction in 2002.

In his pleadings, Petitioner raises claims of illegal search and seizure, jury taint,

insufficient evidence, and prosecutorial misconduct. For the reasons stated below, the petition

for writ of habeas corpus is denied.  Additionally, a certificate of appealability and leave to proceed *in forma pauperis* on appeal are also denied.

## II.    Facts and Procedural History

Petitioner's convictions stem from a shooting incident in Detroit, Michigan on April 3, 2001.  The evidence at trial indicated that Petitioner discharged a rifle at a residence occupied by five people.  The prosecution's theory was that Petitioner fired at the house because he was upset with one of the occupants, Stanley Cornelius, over Cornelius' relationship with Petitioner's former girlfriend and mother of his child.  The defense claimed that Petitioner was not the shooter.

On direct appeal to the Michigan Court of Appeals, the prosecution summarized the relevant trial testimony as follows:

> Sparkle Martin was romantically involved with defendant early on during her life, but their relationship took a turn for the worse as soon as defendant learned that Martin was pregnant. Martin later gave birth to a baby boy. 12/17, 36-37.
>
> Martin became friendly with Stanley Cornelius, a young man with whom she attended high school. 12/17, 39, 66. . . .Cornelius lived with his mother, his grandmother, and his brother and sister. 12/16, 20.
>
> Defendant lived in close proximity to Martin. 12/17, 39, 41-42.
>
> On March 31, 2001, Cornelius had arranged to drive Martin to her goddaughter's first birthday party. 12/17, 42, 66. Cornelius appeared at the designated hour and was in his car waiting on Martin who was putting her son in the car seat. 12/17, 41.
>
> Defendant pulled up in his mother's green Ford Explorer and attempted to speak with Martin after she had her son safely in the seat and the car door shut. 12/17, 43. Defendant asked where Martin was going and what time she would be back. Martin said she was leaving and did not know what time she would return.... Id.
>
> Martin entered Cornelius's vehicle and the three drove off. 12/17, 43-45. Defendant followed, behaving and driving erratically—defendant was turning his head lights on and off and nearly hit Cornelius's car on several occasions. Id.

Unsure of what to do, Cornelius drove back to Martin's house so that Martin could call the police. Martin was on the porch waiting for someone to answer the doorbell when defendant pulled up next to Cornelius and said something to him. Martin could only hear defendant because he had his window down and the driver's side of his car was facing her. Defendant cursed at Cornelius, then brandished a weapon, prompting Cornelius to drive off. Id.

Defendant then yelled to Martin, who was still standing on her porch waiting for someone to answer the door, that if he saw that "nigga around my mother fuckin' son again he gettin' fucked up, you gettin' fucked up, he gettin' fucked up because your ass done started something now." 12/17, 46.

On the very next morning, April 1st Cornelius's car was shot up. Cornelius was able to see the tail end of a green Ford Explorer driving away after this shooting. A police report of the incident was made. 12/17, 74-77.

But two days later, at around 5:30 a.m. . . Cornelius's house was riddled with some ten to fifteen bullets that shattered the windows, shredded the china cabinet, knocked pictures down off of the wall, and left the living room dust-filled from the plaster that had been ripped apart by the spraying of bullets. 2/17, 11-13, 30-31, 134, 143, 164-165, 178-180, 185-186; 12/18, 18-22, 35-36. Cornelius himself was almost hit by bullet that eventually lodged into a kitchen cabinet. 12/17, 77-80.

DeEttra Perry, a neighbor to Cornelius, was awake ...when the gunfire erupted. She looked out of her window and witnessed flashes of gunfire emanating from the passenger side of a white GMC Suburban... 12/17, 105-110.

Police Officers Ronald Taylor and Delawn Steen made the scene of the shooting on the 3rd of April, backed up by Officers William DeCicco and Maureen Gray. 12/17, 119-128, 133-136, 152-162; 12/18, 33-36. The officers were given the name and address of the defendant, and a description of the vehicle involved in the shooting. Id. The Cornelius home had clearly been peppered with bullets, and there were some ten or eleven 9 mm shell casings lying in the street in front of the home. 4/25, 49-50. As the officers were taking an incident report, the vehicle purportedly used to commit these crimes drove by and Taylor was alerted to this fact. 4/25, 51-52. He got his partner and the two tried to track down the vehicle, but to no avail. 4/25, 52-53.

After taking a report, the responding police officers then proceeded to the address they had been given for defendant. Taylor and/or Steen knocked on the front door while the back up scout took up a position in the rear. 12/17, 119-128, 133-136, 152-162; 12/18, 33-36. Taylor and Steen were greeted by a person who identified himself as Shawn Jackson. Jackson stated that he lived at the address and was defendant's roommate, and after being told why the officers were present, consented to the officers searching the house. Id., 12/13, 9, 13-17. Steen stayed

3

with Jackson while Taylor went to the back of the house. Id. Taylor returned with a rifle that, based upon Taylor's inspection, had been recently fired. 4/25, 58. Taylor found the weapon on a bed in a room with an open door. 4/25, 59. Also placed in evidence was a box of 9 mm ammunition. 4/25, 54.

After confiscating the weapon and ammunition, the police moved down the street to set up surveillance on defendant's home, hoping that he would soon return. 12/17, 119-128, 133-136, 152-162; 12/18, 33-36. Not too long afterward, a white GMC Suburban did indeed pull up and defendant was seated as a passenger therein. Defendant was arrested and an empty 9 mm shell casing was found on the passenger's seat. Another empty 9 mm casing was found on the driveway leading up to the side door of defendant's residence. Id.

The Suburban was taken into custody and a gunshot residue test was performed. 12/17, 161-162; 182-183. The results of the test revealed gunshot residue on the passenger's door panel, as well as on the front and back ceiling liners. 12/18, 5-7.

The shell casings recovered from the front of the Cornelius home were microscopically examined and determined to have been fired from the assault rifle seized from defendant's home.[4] 12/18, 17-20.

Defendant's defense at trial was that there was no identification of him as the perpetrator of these crimes. 12/18, 73-96.... In particular, defendant chose to make the absence of Claude Hunt, who was listed on the prosecution's witness list but not endorsed to be called at trial, a reason why the jury should acquit him....

Prosecution's Brief on Appeal, pp. 4-8 (irrelevant text and footnotes omitted).

At the close of trial, the jury convicted Petitioner of five counts of assault with intent to commit murder, discharge of a firearm at an occupied structure, and possession of a firearm during the commission of a felony. The trial court subsequently sentenced him to concurrent terms of 15-25 years imprisonment on the assault convictions, a concurrent term of two years six months to four years imprisonment on the firearm discharge conviction, and a consecutive term of two years imprisonment on the felony firearm conviction.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of

_____

[4]There were four additional shell casings that were examined and found not to have been fired from defendant's rifle. But these four casings were all fired from the same weapon....

Appeals asserting the same claims contained in the present petition. The Michigan Court of

Appeals affirmed his convictions. *People v. McNoriell*, No. 240748, 2004 WL 257395 (Mich.

Ct. App. Feb. 12, 2004) (unpublished). Petitioner filed an application for leave to appeal with

the Michigan Supreme Court, which was denied. *People v. McNoriell*, 471 Mich. 872, 685

N.W.2d 671 (2004). Petitioner's motion for reconsideration was also denied. *People v.*

*McNoriell*, 471 Mich. 923, 688 N.W.2d 829 (2004). Petitioner also filed a petition for writ of

certiorari with the United States Supreme Court, which was denied. *McNoriell v Michigan*, 544

U.S. 986 (2005).

       Petitioner thereafter filed the present habeas petition asserting the following claims:

I.      He is entitled to habeas relief where the trial court failed to suppress a weapon which was seized during a search made with no showing of valid consent to search his home, and the state court failed to afford him a full and fair hearing on the matter.

II.     He is entitled to habeas relief where after a bomb threat caused evacuation of the courthouse during the middle of witness testimony, the trial court failed to inquire into whether the jury felt the threat was linked to him and failed to inquire whether any juror would be prejudiced against him as a result.

III.    There was insufficient evidence to convict him because no evidence showed that he was the shooter or had anything to do with the shooting.

IV.    He is entitled to relief where the prosecutor gave unsworn testimony and made burden shifting comments during closing argument.

Respondent has filed an answer to the petition, asserting that it should be denied because the

claims are not cognizable, barred by procedural default, and/or lack merit. Petitioner has filed a

reply to that answer.

**III.**    **Standard of Review**

       The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his

habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336

(1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable
>         application of, clearly established Federal law, as determined by the
>         Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination
>         of the facts in light of the evidence presented in the State court
>         proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see

also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of §

2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a

federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the

state court's decision must have been more than incorrect or erroneous. The state court's

application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, this Court presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Analysis

### A.    Illegal Search Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court failed to suppress a weapon seized during a search of his residence which was done without valid consent. Respondent contends that this claim is not cognizable upon federal habeas review.

Federal courts will not address a Fourth Amendment claim upon habeas review if the

petitioner had a full and fair opportunity to litigate the claim in state court and the presentation

of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell*,

428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining

whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must

determine whether the state procedural mechanism, in the abstract, presents the opportunity to

raise a fourth amendment claim. Second, the court must determine whether presentation of the

claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*,

213 F.3d 947, 952 (6ᵗʰ Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6ᵗʰ Cir. 1982)).

Michigan has a procedural mechanism which presents an adequate opportunity for a

criminal defendant to raise a Fourth Amendment claim. *See, e.g., People v. Ferguson*, 376

Mich. 90, 93-94 (1965) (motion to suppress), *People v. Harris*, 95 Mich. App. 507, 509 (1980).

Petitioner has not shown that a failure of that procedural mechanism prevented him from

litigating his claims. The record reveals that Petitioner challenged the legality of the search and

seizure prior to trial. The trial court denied the motion to suppress. Petitioner again raised the

issue on direct appeal. The Michigan Court of Appeals conducted a thorough review of the

Fourth Amendment issues and concluded that Petitioner was not entitled to relief on his claims.

*See McNoriell*, 2004 WL 257395 at *1.

Given this record, it is clear that the Michigan courts were cognizant of Petitioner's

Fourth Amendment issues and that he received all the process he was due. While Petitioner

challenges the state courts' handling of his claims and their resulting decisions, he has not

shown that the procedures were flawed such that he was unable to properly litigate these issues.

Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims.

Accordingly, his claims concerning the validity of the search and seizure are not cognizable on

federal habeas review pursuant to *Stone v. Powell*. Habeas relief is not warranted on this claim.

B.     Bomb Threat Evacuation/Jury Taint Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court failed to

question the jurors about possible bias following a bomb threat evacuation that occurred during

trial. Respondent contends that this claim is barred by procedural default and lacks merit.

The Sixth Amendment right to a jury trial guarantees a criminal defendant a fair trial by

a panel of impartial jurors. *Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("Due process means a

jury capable and willing to decide the case solely on the evidence before it, and a trial judge

ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences

when they happen."); *see also DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) (citing *Irvin*

*v. Dowd*, 366 U.S. 717, 722 (1961)). Reviewing courts have recognized that the trial court is in

the best position to determine the nature and extent of alleged jury misconduct, as well as the

appropriate remedy for any demonstrated misconduct. *See United States v. Gaitan-Acevedo*,

148 F.3d 577, 590 (6th Cir. 1998) (citing *United States v. Copeland*, 51 F.3d 611, 613 (6th Cir.

1995)); *United States v. Tines*, 70 F.3d 391, 398 (6th Cir. 1995). The United States Court of

Appeals for the Sixth Circuit has ruled that a trial court is required to investigate the issue of

jury taint when "there is a credible allegation of extraneous influences" to ensure that the

defendant's constitutional rights have not been violated. *See United States v. Corrado*, 227 F3d

528, 536 (6th Cir. 2000) (citing cases). A state court's factual findings concerning jury

impartiality are presumed correct and may only be overcome by clear and convincing evidence.

*See* 28 U.S.C. § 2254(e)(1); *DeLisle*, 161 F.3d at 382 ("we may only overturn a state court's

findings of juror impartiality if those findings were manifestly erroneous").

The Michigan Court of Appeals addressed this claim as follows:

Apparently, a short while after the second day of trial began, the court stopped
trial in order to evacuate the building because of a bomb scare. Trial resumed the
following Monday with all jurors present, save one, and the missing juror was
excused. Defendant now claims prejudice with regard to the incident. Having
considered this unpreserved issue for plain error affecting defendant's substantial
rights, we find no basis for relief. *People v. Carines*, 460 Mich. 750, 763; 597
NW2d 130 (1999).

In general, claims of juror misconduct do not per se require reversal. *People v.
Messenger*, 221 Mich. App. 171, 175; 561 NW2d 463 (1997). When a defendant
claims that the jury was exposed to extraneous influences, the defendant has the
initial burden of proving the jury's exposure to the extraneous influence and that
the extraneous influence created a real and substantial possibility that it could
have affected the jury's verdict. *People v. Budzyn*, 456 Mich. 77, 88-89; 566
NW2d 229 (1997).

Although there are circumstances in which a trial court may have a sua sponte
duty to investigate, because defendant did not allege any claim of juror
misconduct at trial and there is nothing in the record to indicate that the trial
court should have been alerted to the possibility of juror misconduct, we
conclude that the trial court's failure to sua sponte conduct an investigation was
not error. *United States v. Corrado*, 227 F3d 528, 536 (CA 6, 2000). Indeed,
there is nothing in the record to suggest that defendant was connected to the
courthouse evacuation. The fact that defendant's trial was interrupted by the
evacuation did not impose a duty on the trial court to sua sponte question jurors
whether they might have connected the evacuation to defendant or discussed the
case. The trial court instructed the jurors on the first day of the trial to "be sure
you don't discuss this case with anyone. The only time you can discuss the case
is at the end of the trial, when you are all together starting your deliberations and
I tell you to discuss it." "It is well established that jurors are presumed to follow
their instructions." *People v. Graves*, 458 Mich. 476, 486; 581 NW2d 229
(1998).

*McNoriell*, 2004 WL 257395 at *2.

Petitioner has not shown that this decision is contrary to United States Supreme Court

precedent or that it constitutes an unreasonable application of the law or the facts. Petitioner

has not demonstrated that the trial court's response to the situation was inappropriate or

inadequate. He has not alleged a credible claim of extraneous influence upon the jury, nor

provided any evidence to support his allegation of jury bias or taint. Conclusory allegations,

without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v.

Bell*, 160 F.3d 276, 287 (6th Cir. 1998). Petitioner has not shown that the jurors on his case were

unable to render a fair and impartial verdict. Habeas relief is not warranted on this claim.[1]

### C. Sufficiency of Evidence Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to

present sufficient evidence to support his convictions. Respondent contends that this claim

lacks merit. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court

established that the standard of review for a sufficiency of the evidence challenge must focus on

whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Id.* at 319. Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state

court's application of the *Jackson* standard was reasonable. In making this determination, the

Court must presume that the state court's factual findings are correct, unless rebutted by clear

and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Warren*, 161 F.3d at 360-61.

Under Michigan law, a conviction for assault with intent to murder requires proof

beyond a reasonable doubt that the defendant committed: "(1) an assault, (2) with an actual

intent to kill, (3) which, if successful, would make the killing murder." *People v. Hoffman*, 225

Mich. App 103, 111, 570 N.W.2d 146 (1997); *see* Mich. Comp. L. § 750.83. Circumstantial

evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of

---

[1]Given the Court's determination that this claim lacks merit, the Court declines to address
Respondent's procedural default argument as to this issue.

the crime, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a

defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31

(1997). The elements of discharge of a firearm at an occupied structure are: (1) an intentional

discharge of a firearm, (2) at a facility, (3) that the defendant knows or has reason to know is a

dwelling or an occupied structure. *See People v. Durant*, No. 260546, 2006 WL 1236677

(Mich. Ct. App. May 9, 2006); Mich. Comp. L. § 750.235b. The elements of felony firearm are

possession of a firearm during the commission or attempted commission of a felony. *See*

*People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863, 873 (2003) (quoting *People v.*

*Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); Mich. Comp. L. § 750.227b.

Applying the *Jackson* standard, the Michigan Court of Appeals found that the

prosecution presented sufficient evidence to support Petitioner's convictions, stating in relevant

part:

> Viewed in a light most favorable to the prosecutor, the evidence in this case
> showed that defendant embarked on a course of conduct directed at Stanley
> Cornelius, which began on March 31, 2001, with defendant verbally manifesting
> anger and also displaying a gun and driving erratically around Cornelius' car.
> Defendant's conduct escalated when he shot at Cornelius' car on April 1, 2001,
> and culminated with the charged crimes involving the firing of gunshots into
> Cornelius' home on April 3, 2001. Defendant was linked to each of these events.
> Circumstantial evidence linked defendant to a vehicle connected to the shooting,
> and several shell casings and some bullet fragments that were recovered from the
> crime scene matched a firearm that was seized from defendant's home shortly
> after the shooting. Viewed in a light most favorable to the prosecution, the
> evidence was sufficient to enable a rational trier of fact to find beyond a
> reasonable doubt that defendant was the shooter.

*McNoriell*, 2004 WL 257395 at *3.

Having reviewed the record, this Court finds that the Michigan Court of Appeals'

determination in this regard is neither contrary to *Jackson* nor an unreasonable application of

federal law or the facts. Petitioner's challenge to the sufficiency of the evidence focuses on whether the prosecution established his identity as the perpetrator of the shooting. The gun recovered from Petitioner's residence, the scientific evidence linking that weapon to casings and shells found at the scene, the evidence connecting Petitioner to the vehicle seen in the vicinity of the shooting, and the testimony of Petitioner's animosity and conduct toward Stanley Cornelius provided sufficient evidence to support the determination that Petitioner committed the shooting at issue. Petitioner has presented no evidence to rebut the state court's factual findings nor has he demonstrated that the state court's conclusion that the facts establish his guilt beyond a reasonable doubt is unreasonable.

Petitioner's insufficiency of evidence claim attacks the inferences that the jury drew from the testimony and evidence presented at trial. Such determinations, however, are not matters for federal habeas review. "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

Additionally, to the extent that Petitioner challenges the Michigan Court of Appeals' construction or application of state law, he is not entitled to habeas relief. "A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254. A federal court may not issue the writ on the basis of a perceived error of state law." *See Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Given the witness testimony

and the physical evidence recovered from the scene and Petitioner's residence, this Court finds

that the Michigan Court of Appeals' determination that a rational trier of fact could find the

essential elements of the crimes charged beyond a reasonable doubt was reasonable. Petitioner

is not entitled to habeas relief on this claim.

####    D.        Prosecutorial Misconduct Claims

Lastly, Petitioner asserts that he is entitled to habeas relief because the prosecution

engaged in misconduct by making arguments unsupported by the evidence and by shifting the

burden of proof during closing arguments. Respondent contends that these claims are barred by

procedural default and do not warrant habeas relief.

####        1.        Unsupported Arguments

Petitioner contends that the prosecution made arguments which were unsupported by the

evidence. The Court agrees with Respondent that these claims are barred by procedural default.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts

in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72 (1977);

*Couch v. Jabe*, 951 F.2d 94 (6ᵗʰ Cir. 1991). In *Wainwright*, the United States Supreme Court

explained that a petitioner's procedural default in the state courts will preclude federal habeas

review if the last state court rendering a judgment in the case rested its judgment on the

procedural default. 433 U.S. at 85.

In such a case, a federal court must determine not only whether a petitioner has failed to

comply with state procedures, but also whether the state court relied on the procedural default

or, alternatively, chose to waive the procedural bar. "A procedural default does not bar

consideration of a federal claim on either direct or habeas review unless the last state court

rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last *explained* state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id*.

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In dismissing these prosecutorial misconduct claims, the court relied upon a state procedural bar – Petitioner's failure to timely object to the alleged improper remarks at trial.  *See McNoriell*, 2004 WL 257395 at *3.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules.  *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  The Michigan Court of Appeals denied these claims based upon Petitioner's failure to timely object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice

15

resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of

justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner neither alleges nor establishes cause to excuse his default. The Court need not

address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural

default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289

(6th Cir. 1983).

Additionally, Petitioner has not established that a fundamental miscarriage of justice has

occurred. The miscarriage of justice exception requires a showing that a constitutional violation

probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S.

298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal

insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim

of actual innocence] requires petitioner to support his allegations of constitutional error with

new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at

324. Petitioner has made no such showing. These prosecutorial misconduct claims are thus

barred by procedural default and do not warrant habeas relief.

        2.       Burden-Shifting

Petitioner also claims that the prosecution improperly shifted the burden of proof during

rebuttal argument by stating that Petitioner could have called a witness (who testified at the

preliminary examination, but was not produced at trial) in support of his defense but did not do

so. Although Respondent argues that this prosecutorial misconduct claim is also barred by

procedural default, an argument can be made that the Michigan Court of Appeals did not clearly

and expressly rely upon Petitioner's failure to timely object during closing arguments given that

the court considered the merits of Petitioner's burden-shifting argument in the context of the

trial court's denial of a mistrial motion. *See McNoriell*, 2004 WL 257395 at *3-4.

Accordingly, this Court will address the merits of this issue.

       To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate

that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The

United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining

whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v.*

*Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine

whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of

impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is

determined by an examination of four factors: 1) whether the statements tended to mislead the

jury or prejudice the accused; 2) whether the statements were isolated or among a series of

improper statements; 3) whether the statements were deliberately or accidentally before the

jury; and 4) the total strength of the evidence against the accused. *Id*.

       The Michigan Court of Appeals denied relief on this claim, finding that the prosecutor's

rebuttal argument was not improper because it was made in response to defense arguments and

did not shift the burden of proof to the defense. The court explained:

> The trial court did not abuse its discretion in denying defendant's motion for a
> mistrial. Underlying defendant's claim are remarks made about an individual,
> Claude Hunt, who testified at the preliminary examination, but was not called by
> either party at trial. Review of the record demonstrates that the prosecutor's
> rebuttal remarks were a fair response to defense counsel's repeated remarks in
> closing argument that the jury should find reasonable doubt because the

prosecutor did not call Hunt as a prosecution witness. Defense counsel did not establish any basis for an evidentiary inference that the missing witness' testimony would have been unfavorable to the prosecutor. *People v. Perez*, 469 Mich. 415, 420; 670 NW2d 655 (2003). Nonetheless, defense counsel advanced a theory in closing argument that implied that Hunt's testimony could exonerate him. Under these circumstances, the prosecutor's rebuttal argument that defendant did not have an obligation to present witnesses, but could have called Hunt as a defense witness, was not improper. *People v. Fields*, 450 Mich. 94, 115; 538 NW2d 356 (1995). Indeed, the prosecutor specifically stated in her rebuttal remarks, "We have the burden of proof [sic] it doesn't shift to him, but the Defendant has rights he can bring in witnesses if he wants to. If he's so important he could have brought him in." Further, the trial court later instructed the jury that "[t]he defendant is not required to prove his innocence or to do anything. If you find that the Prosecutor has not proven every element beyond a reasonable doubt, then you must find the defendant not guilty."

Because defendant did not establish a burden-shifting error, the trial court did not abuse its discretion in denying defendant's belated motion for a mistrial. The trial court correctly determined that the prosecutor made a fair response to defense counsel's remarks.

*McNoriell*, 2004 WL 257395 at *3-4.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. While it is improper for the prosecution to impliedly shift the burden of proof to a defendant, *see United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993), the prosecutor's rebuttal argument did not do so. Although the prosecutor told the jury that Petitioner had the right to call the allegedly favorable witness but did not do so, the prosecutor reminded the jury that the prosecution retained the burden of proof at trial. The prosecution's remarks were an appropriate response to defense counsel's arguments and did not improperly shift the burden of proof to the defense. Moreover, the trial court instructed the jury on the burden of proof during trial. Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has

18

not established that the prosecution erred – or that he was denied a fundamentally fair trial. Habeas relief is not warranted on this claim.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims in his petition and that the petition must be denied.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id.* at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to each of his claims and has failed to show that reasonable jurists would debate whether the Court was correct in its procedural ruling as to his defaulted claim. A certificate of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous. *See* Fed. R. App. P. 24(a). Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.


s/John Corbett O'Meara
United States District Judge


Date: October 25, 2007


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, October 25, 2007, by electronic and/or ordinary mail.


s/William Barkholz
Case Manager